444 F.2d 446
 Fed. Sec. L. Rep. P 93,089
Edward W. HILGEMAN, on behalf of himself and all other
purchasers of 'Security Charter Contracts' issued
and sold by National Insurance Company
of America, Plaintiff-Appellant,
v.
NATIONAL INSURANCE COMPANY OF AMERICA, etc., et al.,
Defendants-Appellees.
 No. 30707.
 United States Court of Appeals, Fifth Circuit.
 June 16, 1971.
 
 F. Don Siegal, J. Vernon Patrick, Jr., Howard P. Walthall, Birmingham, Ala., for plaintiff-appellant; Berkowitz, Lefkovits & Patrick, Birmingham, Ala., of counsel.
 Alan W. Heldman, Birmingham, Ala., for defendants-appellees; Deramus, Johnston, Barton, Proctor & Swedlaw, Birmingham, Ala., of counsel.
 William M. Acker, Jr., A. Lamar Reid, George R. Stuart, III, Birmingham, Ala., for amicus curiae, State Security Life Ins. Co.; Smyer, White, Reid & Acker, Birmingham, Ala., of counsel.
 Before JOHN R. BROWN, Chief Judge and COLEMAN and CLARK, Circuit judges.
 CLARK, Circuit Judge:
 
 
 1
 Edward W. Hilgeman, plaintiff-appellant, filed a complaint based upon Section 22 of the Securities Act of 1933[1] and Section 27 of the Securities Exchange Act of 1934[2] for himself and purportedly on behalf of approximately one thousand persons who bought a Security Charter Contract from the National Insurance Company of America (NICOA), a North Dakota corporation. The instrument was purchased in 1963 while Hilgeman was a resident of the State of Washington. Subsequently Hilgeman moved to Alabama, where the instant suit was filed.
 
 
 2
 Hilgeman's complaint alleged: (1) that the Security Charter Contracts sold by NICOA to Hilgeman and others were 'securities' as defined by, and therefore subject to, the Securities Act of 1933 and the Securities Exchange Act of 1934; (2) that Hilgeman and the others were defrauded and damaged by NICOA's misrepresentation of material facts and omissions to disclose material facts in connection with the offering and sale of the securities;[3] and, (3) that the contract sold to Hilgeman was required to be registered with the Securities Exchange Commission under the 1933 Act, but was not registered prior to being offered and sold to Hilgeman and his class.[4]
 
 
 3
 In addition to NICOA, Hilgeman joined as defendants Empire Life Insurance Company (Empire), an Alabama Company, which became the controlling stockholder of NICOA in 1965; Wesley Sando, who allegedly controlled NICOA; and Shearn Moody, who allegedly controlled both NICOA and Empire. Sando and Moody were served at their residences by United States Marshals in North Dakota and Texas, respectively. The two corporate defendants were not served pursuant to the process provisions of the federal securities law,[5] but rather by substituted service upon the Alabama Superintendent of Insurance pursuant to state law.[6] For such service to be possible, the case must be one 'arising out of' contracts of insurance.
 
 
 4
 NICOA made a special appearance at which time it made motions to quash the process served on it and to dismiss on the ground that the United States District Court for the Northern District of Alabama lacked venue jurisdiction over it and on the ground of the insufficiency of the service of process. Specifically, NICOA alleged that it was a resident of North Dakota; and had never qualified to do business in Alabama, maintained an agent, or actually done business in Alabama. Moreover, the policy had been sold to Hilgeman in Washington; all the sales material had been exhibited to him there; and, all transactions had been conducted there. NICOA contends that there was a complete absence of even minimum contacts with Alabama necessary to support service of process on or personal jurisdiction over it.
 
 
 5
 Shearn Moody appeared specially and made the same notions on grounds identical to those advanced by NICOA. Additionally, he denied Hilgeman's allegation that he controlled NICOA and Empire at all relevant times. He asserted that Empire did not acquire control of NICOA until some two years after Hilgeman purchased the instant policy from NICOA. Similarly, Empire appeared specially and made the same motions on the same grounds as asserted by NICOA and Moody. Wesley Sando moved to dismiss on the grounds that the district court lacked personal jurisdiction.
 
 
 6
 Subsequent to these motions, the district court issued a memorandum opinion which analyzed the Court's subject matter jurisdiction. The trial judge concluded from Hilgeman's complaint and affidavits and an examination of a specimen copy of the Security Charter Contract that the instrument was a policy of insurance. Therefore, the court concluded that it lacked jurisdiction of the controversy since Section 3(a) of the Securities Act of 1933[7] exempts policies of insurance from the provisions of the Securities Acts.
 
 
 7
 Having made the above determination, the district judge next considered Hilgeman's contention that he was entitled to show that, because of the terms of the offering and other facts outside the face of the instrument, the contract was nevertheless a security. He concluded a litigant should be allowed to bring in background facts such as the terms of the offer, plan of distribution and economic inducements only where the terms of the instrument are subject to varying interpretations, a factor not present in NICOA's Security Charter Contract.
 
 
 8
 Simultaneous with the issuance of the memorandum opinion the district court entered an order dismissing the action, which merely stated: 'In conformity with this Court's Memorandum Opinion evtered contemporaneously herewith, the motions of all the defendants to dismiss for the lack of jurisdiction (over the person) will be granted.' Thus, we are unable to discern from the record before us whether the order of dismissal appealed from was based upon lack of personal jurisdiction, lack of subject matter jurisdiction, or both. We therefore remand the case, with directions that the district judge specify the ground or grounds of his order.
 
 
 9
 Sound judicial husbandry indicates that we say more. If the order was predicated upon lack of personal jurisdiction, the court must be specific in its findings and conclusions as to Empire, an Alabama corporation, which was served with process in Alabama. On the other hand, if the lack of subject matter jurisdiction was the basis of his order, the court must reconcile its preliminary dismissal action with the teachings of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).
 
 
 10
 Should the court determine to treat the motion to dismiss as a motion for summary judgment under F.R.Civ.P. 12(b), 56, the parties must be allowed to fully develop the facts, through discovery or otherwise, to support their record. The judge may then decide, on the merits, whether summary judgment is proper or whether there are genuine issues of material fact requiring a trial.
 
 
 11
 The order appealed from is vacated and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 12
 Vacated and remanded with directions.
 
 
 
 [1]
 15 U.S.C.A. 77v (1963)
 
 
 [2]
 15 U.S.C.A. 78aa (1963)
 
 
 [3]
 Specifically, Hilgeman charges that (1) NICOA's salesmen falsely represented that the policy would pay substantial annual dividends, (2) in this connection NICOA salesmen displayed to him separate materials containing misleading projections of earnings and dividends, and (3) NICOA also failed to prepare a prospectus as required by the Securities Acts
 
 
 [4]
 There are also a number of pendant state claims contained in the complaint. These claims, however, have no relevance to the disposition of the case before this panel
 
 
 [5]
 15 U.S.C.A. 77v and 78aa
 
 
 [6]
 Ala.Code Tit. 28, 413, 417(20) (recomp.1958)
 
 
 [7]
 15 U.S.C.A. 77c(a)(8) (1963)